# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>GIBSON BRANDS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br>Case No. 18-11025 (CSS)<br><br>(Jointly Administered)<br><br>Hearing Date: July 25, 2018 at 10:00 a.m. (ET)<br>Objection Deadline: July 18, 2018 at 4:00 p.m. (ET) |

## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR AN ORDER (I) PURSUANT TO BANKRUPTCY RULE 2004 AND LOCAL BANKRUPTCY RULE 2004-1 DIRECTING THE PRODUCTION OF DOCUMENTS BY THE DEBTORS, GSO CAPITAL PARTNERS LP, AND THE AD HOC COMMITTEE OF SENIOR SECURED NOTEHOLDERS; AND (II) EXTENDING THE CHALLENGE PERIOD DEADLINE

The Official Committee of Unsecured Creditors (the "Committee") of Gibson Brands, Inc. and certain of its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby respectfully moves (the "Motion"), pursuant to Bankruptcy Code sections 105(a), 363 and 364 and Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"):

(I) Directing GSO Capital Partners LP ("GSO"), the Debtors, and the Ad Hoc Committee of Senior Secured Noteholders (together with GSO and the Debtors, collectively, the "2004 Recipients"), to produce documents and communications within their respective possession, custody, or control

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Gibson Brands, Inc.; (4520); Cakewalk, Inc. (2455); Consolidated Musical Instruments, LLC (4695); Gibson Café & Caller, LLC (0434); Gibson International Sales LLC (1754); Gibson Pro Audio Corp. (3042); Neat Audio Acquisition Corp. (3784); Gibson Innovations USA, Inc. (4620); Gibson Holdings, Inc. (8455); Baldwin Piano, Inc. (0371); Wurlitzer Corp. (0031); and Gibson Europe B.V. (Foreign).

35316/2
06/28/2018 202438198.10

that are responsive to the categories set forth in the document requests attached hereto as **Exhibit B** and **Exhibit C** (collectively, the "2004 Document Requests"), by no later than July 31, 2018 at 4:00 p.m. (Eastern); and

(II) Extending the Challenge Period Deadline as defined in the *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, and (II) Granting Adequate Protection to Prepetition Secured Parties* (the "Final DIP Order") [Docket No. 220], for an additional 60 days to and including September 6, 2018.[2]

In support of this Motion, the Committee respectfully states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Committee consents to the entry of a final order in connection with this Motion in accordance with Local Rule 9013-1(f) if it is determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### BACKGROUND

3. The Debtors are one of the world's leading designers and manufacturers of guitars, guitar products, other fretted instruments and accessories. Declaration of Brian J. Fox ("Fox Decl.") at ¶¶ 10-11 [Docket No. 4].

4. Prior to the Petition Date (defined below), the Debtors had approximately $475 million of allegedly secured funded debt under three facilities:

---

[2] While the Committee's Challenge Period Deadline under the Final DIP Order currently expires on July 8, 2018, because this Motion was filed prior to this date, the Committee's Challenge Period Deadline is automatically excluded through the date the Court acts on this Motion pursuant to Local Rule 9006-2.

(a) an asset-backed revolving loan owed to Bank of America, N.A., as lender and letter of credit issuer, with $17.5 million of revolver principal and $2.176 million of letters of credit allegedly outstanding as of the Petition Date;

(b) domestic term loan owed to GSO Capital Solutions Fund II AIV-I LP and GSO Capital Solutions Fund II AIV-IV LP, with $77.4 million of principal allegedly outstanding as of the Petition Date; and

(c) 8.875% notes due 2018 owed to certain holders thereof, with an aggregate principal amount outstanding of $375 million as of the Petition Date.

5. More specifically, on February 15, 2017, certain Debtors executed an Amended and Restated Loan Agreement ("ABL Loan Agreement"), pursuant to which two separate lines of credit were extended (the "ABL" and the "Term Loan," respectively). Each of the Debtors served as grantors and guarantors for the loans. On the same date, the Debtors also obtained a $60 million International Term Loan ("ITL") pursuant to a certain International Term Loan Agreement ("ITL Loan Agreement") to finance their consumer electronics business. Fox Decl. at ¶ 42. According to the Debtors' Chief Restructuring Officer, Brian J. Fox, Gibson's consumer electronics business started facing significant declines in sales and ability to operate, as a result of a loss of credit insurance overseas in 2015. Id. at ¶ 14.

6. According to the Debtors, this decline in sales and loss of credit caused the Debtors to accelerate payments connected to the ITL. Id. at ¶ 15. Specifically, starting in the fall of 2017, the Debtors paid down the principal balance of the ITL from $60 million to $24 million. Id. at ¶¶ 42-44.

7. A few months later, on May 1, 2018 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). See Docket No. 1.

8. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. On May 2, 2018, the Court entered an order authorizing the joint administration of the Chapter 11 cases for procedural purposes only pursuant to Bankruptcy Rule 1015 and Local Rule 1015-1. See Docket No. 60.

10. On May 9, 2018, the United States Trustee appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code. See Docket No. 106. The Committee is comprised of seven members: (a) TKL Products Corp., (b) Grover Musical Products, Inc., (c) EDC Inc., (d) Advance Plating, Inc., (e) Koninkkijke Philips N.V., (f) Guoguang Electronic Co., Ltd., and (g) Tronical GmbH.

11. On May 31, 2018, the Court entered Final DIP Order.

12. The Final DIP Order granted the Committee standing and the ability to pursue certain challenges. These challenges include:

(a) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of any of the Prepetition Debt[3] or the Prepetition Liens; or

(b) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, unauthorized post-petition transfers pursuant to section 549 of the Bankruptcy Code, (including any action alleging that the Prepetition ABL Obligations were undersecured), other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses with respect to the Prepetition Debt or the Prepetition Liens against any of the Prepetition Secured Parties in connection with matters related to the Prepetition Credit Documents, the Prepetition Debt, the Prepetition Liens and the Prepetition Collateral

(collectively, the "Challenges"). See Final DIP Order at ¶ 23.

13. Pursuant to paragraph 23 of the Final DIP Order, the Committee's period within which to commence any Challenge against the Prepetition Secured Parties with respect to the Prepetition ABL Obligations expires sixty (60) days after the Committee was formed (the

---

[3] Capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to such terms in the Final DIP Order.

"Challenge Period Deadline"). Given that the Committee was formed on May 9, 2018, the Challenge Period Deadline is currently July 8, 2018. The Challenge Period Deadline may be extended for cause upon a motion filed by the Committee until "any such later date that is ordered by the Court." See Final DIP Order at ¶ 23.

### RELIEF REQUESTED

14. The Committee requests entry of the Proposed Order submitted herewith (a) directing the 2004 Recipients to produce the documents requested in the 2004 Document Requests, and (b) extending the Challenge Period Deadline for an additional 60 days to and including September 6, 2018.

15. As a fiduciary for all unsecured creditors, the Committee is granted broad statutory powers to, among other things, "investigate the acts, conduct, assets and liabilities and financial condition of the debtor, . . . and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. §1103(c)(2).

16. Pursuant to its duties and in an effort to investigate any possible Challenges, on June 15, 2018, the Committee sent via email GSO, the Debtors, and the Ad Hoc Committee of Senior Secured Noteholders, among others, requests for the production of documents and information. See **Exhibit B**. Shortly thereafter, on June 20, 2018 the Committee sent via email to the Debtors a second request for the production of documents and information. See **Exhibit C**. To this date, neither GSO,[4] the Debtors nor the Ad Hoc Committee of Senior Secured Noteholders have produced the requested documents and information. While the Debtors have produced certain documents, they have not fully responded to the Committee's requests or provided any timeline for compliance.[5]

---

[4] On June 27, 2018, counsel for GSO verbally advised counsel for the Committee that GSO intended to respond to the Committee's requests and would produce certain documents to the Committee, but no timeframe for such production has been agreed to. In a conversation with Debtors' counsel on June 28, 2018, he indicated that the Debtors would respond 30 days after they received the Committee request.

[5] On June 18, 2018, the Committee's advisors met with the advisors of the Debtors and the Ad Hoc Committee of Senior Secured Noteholders. In connection with this meeting, the Debtors' advisors requested that production of documents be held in abeyance to accommodate settlement discussions between the parties. The Committee's advisors stated that given the aggressive timeframe remaining in these cases leading up to the proposed confirmation of a plan, that holding production in abeyance only made sense if settlement discussions advanced apace. While the

17. The 2004 Document Requests will inform whether, and to what extent, the 2004 Recipients may have (i) breached any fiduciary duties; (ii) made or received transfers that may constitute fraudulent transfers or preferences; (iii) coordinated their actions; and/or (iv) breached any covenant of good faith and fair dealing. Moreover, the documents in the possession and/or control of the 2004 Recipients will help the Committee determine whether any causes of action may have arisen out of the Prepetition ABL Obligations, the ITL Loan Agreement, the 2014 acquisition of the Philips' consumer electronics business and the Debtors' issuance of additional senior secured notes in connection therewith.

18. Pursuant to Bankruptcy Rule 2004, the 2004 Recipients should be directed to produce at the office of the Committee's counsel, Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, New York, 10020, Attn.: Jeffrey Cohen, Esq., all documents described in the 2004 Document Requests for examination and copying. The Court should compel the 2004 Recipients to produce all requested documents by no later than July 31, 2018 at 4:00 p.m. (Eastern). This timeframe is not unreasonably short given that the Committee first served its document requests on the 2004 Recipients via email on June 15, 2018. Moreover, given a hearing on the Disclosure Statement is scheduled for July 25, 2018, and RSA Milestones require confirmation of a plan by September 7, 2018, the Committee needs to be informed in short order to meaningfully participate in these seminal case events.

19. Likewise, as set forth below, cause exists for the Court to extend the Challenge Period Deadline. Until the 2004 Recipients produce the documents requested by the 2004 Document Requests, the Committee will not be able to fully discharge its fiduciary duty to all creditors by investigating potential claims and causes of action, including claims and causes of action against the Prepetition Secured Parties.

---

Committee will continue to engage in settlement discussions and remains hopeful a resolution can be reached, further delay in production is not a luxury available given the case dynamics.

## REQUESTED DISCOVERY

20. The Committee respectfully submits that sufficient cause exists for the Court to compel the 2004 Recipients to produce the 2004 Document Request on an expedited basis in order for the Committee to determine whether there are any Challenges. The Committee seeks information regarding the topics and subject matters set forth in **Exhibit B** and **Exhibit C** attached hereto.

21. In particular, the Committee seeks information about the Debtors' decision to accelerate payments under the ITL Loan Agreement, and the February 2017 refinancing. Additionally, the Committee seeks information regarding communications between the Debtors and the other 2004 Recipients regarding the Debtors' decision to purchase Philips' consumer electronic business in 2014.

22. Discovery is appropriate for a number of independent reasons, including, without limitation: (i) the existence of potential Challenges and the value of the Debtors' estates which has not been established; (ii) the Debtors' prepayment of the ITL from $60 million to $24 million, with what appears were funds advanced under the ABL Loan Agreement, in the months preceding the Petition Date raises questions and potential Challenges that the Committee must investigate; (iii) the negotiation of CEO, Henry Juskiewicz, and President, David Berryman's, post-confirmation employment/consulting agreements; and (iv) these Chapter 11 cases are on a swift schedule to plan confirmation. These circumstances require that the 2004 Recipients not delay the Committee's efforts to obtain necessary information critical to the Committee's ongoing investigation of the nature and extent of substantial claims against the Debtors' estates and potential Challenges in connection with those claims.

23. Each request in the 2004 Document Requests seeks information concerning the acts, conduct, property, liabilities, and/or financial condition of the Debtors, or matters affecting the administration of the Debtors' estates. As a result, the 2004 Document Requests fall squarely within the permissible scope of discovery under Bankruptcy Rule 2004. The relief requested herein should be granted to permit the Committee to adequately investigate claims against the

Debtors' estates and prevent dissipation of assets. Accordingly, the Committee respectfully submits that the Motion should be granted and the Committee be permitted discovery under Bankruptcy Rule 2004 on an expedited basis.

## BASIS FOR RELIEF

### A. The 2004 Document Requests.

24. The facts and circumstances outlined above demonstrate that good cause exists to allow the Committee to pursue the requested Bankruptcy Rule 2004 discovery in order to aid the Committee's investigation into potential causes of action. The 2004 Document Requests are intended to provide a more complete picture of the specific conduct of the 2004 Recipients that is not otherwise available to the Committee, and will provide the requisite facts needed to determine whether any Challenges or other potential causes of action exist and should be pursued.

25. As previously stated, the Committee is a fiduciary for all unsecured creditors. Thus, the Committee is granted broad statutory powers to, among other things, "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor . . . and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1103(c)(2). To permit the Committee to exercise its investigative powers, Bankruptcy Rule 2004 provides that "[o]n motion of any party in interest, the court may order" the production of documents. Fed. R. Bankr. P. 2004(c).

26. Discovery under Bankruptcy Rule 2004 includes within its scope, *inter alia*, any matter that may relate to the property and assets of the estate; the financial condition of the debtor; and any matter that may affect the administration of a debtor's estate. See Fed. R. Bankr. P. 2004(b); see also In re Teleglobe Commc'ns Corp., 493 F.3d 345, 354 fn. 6 (3d Cir. 2007) (Rule 2004 allows parties with an interest in the bankruptcy estate to conduct discovery into matters affecting the estate); Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548, 564-65 (3d Cir. 2003) ("creditors' committee may certainly assist a debtor in locating property under Bankruptcy Rule 2004"); In re Wash. Mut., Inc., 408 B.R. 45,

50 (Bankr. D. Del. 2010) ("[t]he purpose of the examination is to enable the trustee to discover the nature and extent of the bankruptcy estate."); In re Johns-Manville Corp., 42 B.R. 362, 364 (S.D.N.Y. 1984) ("The examination of witnesses having knowledge or the debtor's acts, conduct, liabilities, assets, etc. is [] proper"). Bankruptcy Rule 2004 affords both debtors and creditors the broad rights of examination of a debtor's or third-party's records. See Snyder v. Soc'y Bank, 181 B.R. 40, 41-42 (S.D. Tex. 1994) (citing Cameron v. United States, 231 U.S. 710, 716 (1914)).

27.    Indeed, the scope of inquiry under Bankruptcy Rule 2004 is broad because "[t]he purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." In re Recoton Corp., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004). This broad inquiry extends to third parties "[b]ecause the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation." In re Ionosphere Clubs, Inc., 156 B.R. 414, 432 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994); see also In re Mittco, Inc., 44 B.R. 35, 36 (Bankr. D. Wis. 1984) ("[w]hen there is a showing that the purpose of the examination is to enable a party to probe into matters which may lead to the discovery of assets by examining not only the debtor, but also other witnesses, such inquiry is allowed"); In re Wilcher, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985) (Rule 2004 examination "may extend to creditors and third parties who have had dealings with the debtor"). This is because "[t]he clear intent of Rule 2004 . . . is to give parties in interest an opportunity to examine individuals having knowledge of the financial affairs of the debtor in order to preserve the rights of creditors." In re GHR Cos., Inc., 41 B.R. 655, 660 (Bankr. D. Mass. 1984).

28.    Furthermore, even in instances where estate representatives try to ascertain whether or not to pursue estate claims, Bankruptcy Rule 2004 is recognized as a proper pre-litigation device that can uncover facts and circumstances that may demonstrate whether a debtor's estate holds a claim against a third party and the strength of any such claim. The

Bankruptcy Court for the District of Delaware has recognized that "[o]ne of the primary purposes of a Rule 2004 examination is as a pre-litigation device." See e.g., Wash. Mut., 408 B.R. at 53. Similarly, as noted in Bennett Funding Group, Bankruptcy Rule 2004 "is properly used as a pre-litigation device to determine whether there are grounds to bring an action." Bennet Funding, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996); see also, In re Blitz U.S.A., Inc., Case No. 11-13603 (PJW) (Bankr. D. Del. June 12, 2012); In re Cynergy Data, LLC, Case No. 09-13038 (KG) (Bankr. D. Del. April 21, 2010); In re Amp'd Mobile, Inc., Case No. 07-10739 (BLS) (Bankr. D. Del. Aug. 5, 2008) (granting Rule 2004 request for investigation into claims for potential improper use and/or conversion of intellectual property); In re Rosenberg, 303 B.R. 172, 175 (B.A.P. 8th Cir. 2004) (use of Rule 2004 to investigate potential claims against the debtor's employer permitted where the claim is an asset of the estate); In re Hughes, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) (rejecting argument that a subpoena issued against an accounting firm seeking the production of documents was improper because it was primarily sought for the purpose of investigating potential claims that the debtor may have against the accounting firm). Accordingly, the Committee's Motion to compel the 2004 Recipients to produce documents should be granted.

B.    **Extension of the Challenge Period Deadline.**

29.    The Final DIP Order provides that the Court may, pursuant to a motion filed by the Committee seeking such relief, extend the Challenge Period Deadline to a later date. Final DIP Order ¶ 23. Further, Bankruptcy Rule 9006(b)(1) provides that the Court may extend unexpired time periods, such as the Challenge Period Deadline, without notice:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice give thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1).[6]

Here, the Final DIP Order at ¶ 23 expressly states that the Challenge Period Deadline can be "any such later date that is ordered by the Court for cause upon a motion filed and served within any applicable period of time set forth in this paragraph...." See Final DIP Order at ¶ 23; see also In re Outer Harbor Terminal, LLC, Case No. 16-10283, 2017 Bankr. LEXIS 1263, *7-8 (LSS) (Bankr. D. Del. May 5, 2017) (Silverstein, J.)(holding that interpretation of prior court order in the context of a motion to extend the challenge period is "as an exercise of contract interpretation rather than the routine enforcement of a prior court order," and noting that the "paramount goal of contract interpretation is to determine the intent of the parties.").[7] The Committee respectfully submits that cause exists to extend the Challenge Period Deadline due to the failure of the Debtors, GSO and the Ad Hoc Committee of Senior Secured Noteholders to promptly provide the documents originally requested on June 15, 2018. Without the requested documents, the Committee cannot complete its investigation and, therefore, cause exists to extend the Challenge Period Deadline.

30. Without the production of documents as contemplated by the 2004 Document Requests, the Committee will be unable to sufficiently evaluate potential claims and causes of action, including Challenges, that may exist against the 2004 Recipients and the pre-petition lenders. As a fiduciary charged with representing the best interests of all creditors in these cases, failure to extend the Challenge Period Deadline would act to severely prejudice the rights of the Committee to fully evaluate all potential claims against the 2004 Recipients and the pre-petition lenders, to the detriment of the Debtors' estates and creditors in these cases.

---

[6] Consistent with this rule, parties routinely agree to consensually extend challenge period deadlines for creditors' committees. See, e.g., In re Southern Air Holdings, Inc., Case No. 12-12690 (CSS) (Bankr. D. Del. Jan. 18, 2013) (Docket No. 469) (extending challenge period deadline by 21 days); In re AFA Inv. Inc., No. 12-11127 (MFW) (Bankr. D. Del. Sept. 4, 2012) (Docket No. 615) (extending challenge period deadline by 28 days); In re Verasum Energy Corp., Case No. 08-12606 (BLS) (Bankr. D. Del. April 1, 2009) (Docket No. 965) (extending challenge period deadline by 62 days).

[7] A copy of Judge Silverstein's bench ruling is attached hereto as **Exhibit D**.

31. Thus, the requested extension of the Challenge Period Deadline to September 6, 2018 is consistent with the provisions of the Final DIP Order, is supported by adequate "cause," and should be approved by the Court as in the best interests of the Debtors' estates and creditors.

### CERTIFICATION PURSUANT TO LOCAL RULE 2004-1

32. Pursuant to Local Rule 2004-l(b), the Committee's undersigned counsel certifies that the Committee's counsel conferred with counsel for the 2004 Recipients regarding the requested production of documents and the timing of such production as noted in footnotes 4 and 5 above. On May 12, 2018, the Committee agreed to enter into a stipulation governing the Debtors provision of confidential information to the Committee. Between May 12, 2018 and May 25, 2018, counsel for the Committee and the Committee's financial advisor, FTI Consulting, have made several informal requests for documents to the Debtors. On June 15, 2018, the Committee sent the 2004 Document Requests to the 2004 Recipients and sent Debtors' counsel a follow up document request on June 20, 2018. See Exhibits B and C annexed hereto. Although the Debtors have provided certain documents in response to the Committees' informal requests, as of the filing of this Motion, a substantial majority of the requests remain outstanding as the expedited timeline of these cases continue to proceed and objection deadlines loom. The Committee remains largely uninformed regarding critical prepetition transactions.

33. This Motion is necessary to ensure that each of the Rule 2004 Recipients are compelled to make complete productions of documents responsive to the Committee's requests, so the Committee can perform an appropriate investigation in the exercise of its fiduciary duties in the timeframe required by these Chapter 11 cases.

### RESERVATION OF RIGHTS

34. The Committee reserves all rights to request, pursuant to Fed. R. Bankr. P. 2004 or otherwise, additional documents or examinations upon review of the documents produced in connection with this Motion or otherwise.

## CONCLUSION

**WHEREFORE,** the Committee respectfully requests the Court grant the Motion and enter the Proposed Order attached hereto as **Exhibit A,** and grant the Committee such further relief as is just and appropriate.

Dated: June 28, 2018  
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew R. Pierce*

Adam G. Landis, Esq.  
Matthew B. McGuire, Esq.  
Matthew R. Pierce, Esq.  
919 Market Street, Suite 1800  
Wilmington, DE 19801  
Telephone: (302) 467-4400  
Facsimile: (302) 467-4450  
E-mail: landis@lrclaw.com  
       mcguire@lrclaw.com  
       pierce@lrclaw.com

-and-

**LOWENSTEIN SANDLER LLP**  
Jeffrey Cohen, Esq. (admitted *pro hac vice*)  
Wojciech F. Jung, Esq. (admitted *pro hac vice*)  
Bruce D. Buechler, Esq. (admitted *pro hac vice*)  
1251 Avenue of the Americas  
New York, New York  
Telephone: (212) 262-6700  
Facsimile: (212) 262-7402  
E-mail: jcohen@lowenstein.com  
       wjung@lowenstein.com  
       bbuechler@lowenstein.com

*Counsel to the Official Committee*  
*of Unsecured Creditors*